PONATH, Corporation Counsel, DEPARTMENT of PUBLIC WELFARE, Respondent, v. HEDRICK, Appellant.

*January 8—February 4, 1964.*

384

For the appellant there were briefs and oral argument by *Arthur E. Engel* of Madison.

For the respondent there was a brief and oral argument by *A. W. Ponath* of Appleton, corporation counsel.

WILKIE, J. The principal issue to be determined on this appeal is whether old-age benefits, paid pursuant to the Federal Social Security Act, 42 USCA, secs. 301 to 1370, and retirement benefits paid pursuant to the Wisconsin retirement fund, sec. 66.90, Stats., are includable items of income in a determination of a person's ability to pay for the support of a dependent relative within the meaning of sec. 52.01 (4).

In his findings supporting the determination of liability, the trial court specifically focused upon the monthly income Mrs. Hedrick received in accrued retirement benefits from the Social Security Act and from the Wisconsin retirement fund, sec. 66.90, Stats.,[3] a system of "social security" for

---

[3] "66.90 WISCONSIN RETIREMENT FUND. (1) *Purpose.* The purpose of this fund is to provide for the payment of annuities and other benefits to employes and to beneficiaries of employes of the state of Wisconsin and municipalities in the state, thereby enabling such employes to provide for themselves and their dependents in case of old age, disability and death, and thereby effecting economy and

state employees. In view of the fact that Mrs. Hedrick's basic needs could be satisfied from her husband's income, the court concluded that a portion of her retirement income could be allocated to the support of her dependent mother.

Mrs. Hedrick's counsel argued on appeal that under the terms of 42 USCA, sec. 407,[4] social-security benefit payments could not be reached by any legal process. Because sec. 66.918 (1) (a), Stats.,[5] contains a clause similar to the provisions of 42 USCA, sec. 407, counsel argues that Wisconsin retirement-fund benefits are not includable items in a determination of ability to pay under the standards set forth in sec. 52.01 (4). We disagree.

efficiency in the public service by furnishing an orderly means whereby employes who become aged or otherwise incapacitated may, without hardship or prejudice, be retired from active service.

"(2) *Creation of fund.* A retirement and benefit fund to be operated and maintained in accordance with ss. 66.90 to 66.918 is hereby created. This fund shall be known as the 'Wisconsin retirement fund.' The fund shall with respect to the accumulation of credits and the payment of annuities and benefits therefrom, be divided into 2 divisions to be known as the fixed annuity division and the variable annuity division. Each division shall be separately held, managed, administered, valued, invested, reinvested, distributed, accounted for and otherwise dealt with. Except where it is otherwise specifically provided, or where the context otherwise requires ss. 66.90 to 66.918 shall apply equally to each division of the fund. Section 66.9065 shall control with respect to the variable annuity division."

[4] 42 USCA, p. 288, sec. 407: "The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law."

[5] "66.918 ASSIGNMENTS. (1) (a) None of the moneys mentioned in ss. 66.90 to 66.918 shall be assignable, either in law or equity, or be subject to execution, levy, attachment, garnishment or other legal process. An annuitant may, however, direct the fund to deduct premiums for group insurance carried under s. 66.919 and to pay such moneys into the general fund to the credit of s. 20.408 (41)."

Federal cases construing 42 USCA, sec. 407, hold that the provisions seek to prevent transfer of benefits *prior to receipt*. ". . . [T]he section [407] is intended to preclude a person entitled to benefits under sections 401 to 409 from transferring his right before, but not after, the Administrator has recognized it." [6] The provisions of sec. 407 apply to the assignment of future receipts, not to received benefits.

Other state jurisdictions have applied the federal construction of sec. 407 in cases involving allocation of received benefits to the payment of a dependent's welfare costs. In *Texas Baptist Children's Home v. Corbitt* [7] the court held that a guardian could be compelled to apply social-security death benefits received by minor children to their maintenance costs in a welfare home. The reason for this construction is apparent. A person whose sole source of received income is accrued social-security benefits cannot be permitted to frustrate all creditors. The comfortable enjoyment of retirement does not entail exemption from reasonable debts contracted during the period of retirement.

The same rationale must apply in the construction of sec. 66.918, Stats. Wisconsin retirement-fund benefits may not be validly assigned prior to accrual. However, when retirement-fund benefits have been recognized, they are subject to legal process in relation to transactions occurring after such recognition, upon determination of a valid claim against the state employee.

However, even though we rule that these payments made under the Federal Social Security Act and from the Wisconsin retirement fund may be reached by general creditors after their receipt, we nevertheless conclude that "due regard" for the "future maintenance" of persons whose source

---

[6] *Beers v. Federal Security Administrator* (2d Cir. 1949), 172 Fed. (2d) 34, 36. See also *Ewing v. Gardner* (6th Cir. 1950), 185 Fed. (2d) 781.

[7] (Tex. Civ. App. 1959), 321 S. W. (2d) 610.

of income derives from social-security benefits, and state employees' retirement funds, and "reasonable allowance for the protection of the property and investments from which they derive their living and their care and protection in old age," requires that these earned retirement benefits be excluded as factors in the determination of ability to pay within the meaning of the relative responsibility statute.

The fundamental purpose of old-age and survivors benefits under the Social Security Act, and the Wisconsin retirement fund, is to insure that persons removed from the active labor market because of advanced age will enjoy comfortable retirement years predicated upon a modest, but adequate, income earned during their active employment years. The social-security system and the Wisconsin retirement fund are predicated upon the insurance principle. Income is diverted from spending to investment for "care and protection in old age." As perceived by the United States supreme court, speaking through Mr. Justice CARDOZO:

"But the ill [unemployment] is all one, or at least not greatly different whether men are thrown out of work because there is no longer work to do or because the disabilities of age make them incapable of doing it. Rescue becomes necessary irrespective of the cause. The hope behind this statute [Social Security Act] is to save men and women from the rigors of the poor house as well as from the haunting fear that such a lot awaits them when journey's end is near." [8]

This rationale is applicable to the Wisconsin retirement-fund program, sec. 66.90, Stats.

Sec. 52.01 (4), Stats., specifically directs the trier of fact to make reasonable allowance for the protection of investment designed to provide income in old age, when determining a responsible relative's ability to provide sup-

---

[8] *Helvering v. Davis* (1937), 301 U. S. 619, 641, 57 Sup Ct. 904, 81 L. Ed. 1307.

port for a dependent. Sec. 52.01 (4) is one of the few relative responsibility statutes which provides a specific legislative elaboration of the standard of ability to pay. Most relative responsibility statutes simply set forth the generic standard of "ability to pay."[9] Because sec. 52.01 (4) expressly directs the trier of fact to make allowance for investments designed to provide income in old age, it would be unreasonable to construe the relative responsibility statute in a manner which would defeat the objectives of government old-age insurance systems.

The average social-security payment is $70 per month.[10] Of the people who receive social-security benefits, 25 percent of them have no other savings at all and half have additional assets of less than $1,000.[11] To allocate funded retirement benefits to the support of dependent relatives would defeat the purpose of these insurance programs— to provide a comfortable standard of living for retired people. An additional obligation of support would reduce most people living on funded retirement benefits to a subsistence standard of living. In giving meaning to the standards of ability to pay, set forth in sec. 52.01 (4), Stats., a judicial task under the provisions of sec. 52.01, we must take care not to defeat the objectives of other social-welfare programs. In light of these "legislative" facts, and the express statutory language relating to an allowance for investment for old age, we conclude that federal social-security benefits, and Wisconsin retirement-fund benefits, are not includable items in a determination of a relative's ability to pay under sec. 52.01 (4).

Counsel for the Department of Public Welfare argues that in assessing Mrs. Hedrick's ability to pay the court may consider her husband's income and economic position.

[9] Mandelker, Family Responsibility under the American Poor Laws, 54 Michigan Law Review, 497, 520–527.

[10] Senate Subcommittee on the Problems of the Aged and Aging (1960).

[11] Ibid.

If the wife has an income that can be considered, then the trial court, under sec. 52.01, Stats., is free to consider her husband's economic position both in terms of his worth and his income. This is because the court should consider these factors in determining the extent to which the husband has sufficient income or other economic position in order for him to assume responsibility for his wife's basic needs, thus freeing her income for possible consideration as an ability to pay on her part for a portion or all of the support furnished to a dependent relative under the statute.

But since, in the case at bar, Mrs. Hedrick had no income that could be legally considered in charging her with a duty to support her mother, there was no basis for the trial court to consider her husband's economic position or income.

*By the Court.*—Order reversed.

HALLOWS, J. (*dissenting*). I cannot agree that "due regard" for "future maintenance" requires this court as a matter of law to create an exemption of social-security benefits and state employees' retirement funds for the purpose of determining under sec. 52.01, Stats., the ability of a parent, spouse, or child, of a dependent person to maintain such person. Neither does the laudable purpose of the social legislation, the Social Security Act, or the Wisconsin retirement fund require such a construction. It was customary before we had governmental assistance, prenatal to postmortem, for families to take care of themselves. As parents took care of their children in youth and beyond, children aided and assisted their parents in old age and in many cases caring for them in their homes. With the advent of social legislation, the moral responsibility for the care of the aged was replaced by what was once scorned as public charity but now eagerly sought as government assistance.

Sec. 52.01, Stats., requires a parent, spouse, and child of a dependent person to maintain such dependent person to

the extent the parent, spouse, and child is able to do so and the law has been held to be constitutional. *Hansis v. Brougham* (1960), 10 Wis. (2d) 629, 103 N. W. (2d) 679. The section is an attempt to charge back legally, in whole or in part, the governmental expense of the care of such dependent person to the individual or individuals who in good conscience ought to pay it to the extent of their ability to pay. This law became necessary because of the selfishness of human nature and its alacrity to allow and demand that the government perform the responsibilities and duties of individuals. When one has abandoned his parent, spouse, or child to the care of the government he should pay for such care to the extent of his ability and not shift that burden to other taxpayers. It was not without purpose and insight that the late President John F. Kennedy in his inaugural address said, "Ask not what your country can do for you but what you can do for your country."

This case recalls Longfellow's ballad, The Bell of Atri, a story of a large bell which the King had hung in the marketplace of the village of Atri and which "whenever wrong was done to any man he should but ring" and the King would cause the Syndic to decide. A knight whose "only passion was the love of gold" turned out his faithful steed in its old age to "feed upon the public ways." The horse rang the bell and at a public trial of the knight, much to the pleasure and approval of the townspeople, the Syndic read the proclamation of the King:

"He who serves well and speaks not, merits more
Than they who clamor loudest at the door.
Therefore the law decrees that as this steed
Served you in youth, henceforth you shall take heed
To comfort his old age, and to provide
Shelter in stall, and food and field beside."

In this case we are dealing with a daughter's legal duty to pay "so far as able" for the governmental assistance

given to her aged mother. Sufficient ability to pay under sec. 52.01, Stats., is a question of fact. Here, the daughter is the joint owner of a substantial equity in a home, has an interest in the estate of her sister, and is adequately supported and maintained by her husband who has the duty and the ability to do so. In addition, the daughter has an income of $110.24 per month which is not shown to be needed for her current or future maintenance. On this showing, the trial court in giving "due regard" to the circumstances of the daughter decided she had sufficient ability to pay $30 a month towards the $119 per month cost of caring for her mother in a nursing home.

I think the trial court's determination was warranted by the evidence and would affirm the order.

I am authorized to state Mr. Justice BEILFUSS concurs in this dissenting opinion.