## Department of Public Welfare v. Early

*Douglas G. Dye,* for appellant.

*Jacques Fox,* Assistant Attorney General, and *William Sennett,* Attorney General, for appellee.

CALDWELL, J., May 29, 1970.—This appeal is taken pursuant to the Administrative Agency Law of June 4, 1945, P. L. 1388, 71 PS §1710, et seq., from a decision of the Secretary of Public Welfare dated September 3, 1969. The proceeding involves an attack upon certain practices of the Pennsylvania Department of Public Welfare in administering the public assistance program of the Commonwealth. Appellant is the mother of five children and the family has been on public assistance since 1963.

In order to qualify for assistance, appellant signed a reimbursement agreement wherein she contracted, on behalf of herself and her children, to repay the department for the assistance granted to the family. In February 1966, one of her children, Fanny Early, was found to be entitled to a Social Security Old Age Survivors and Disability Insurance award (OASDI) of $57.90 per month, retroactive to September 1965. A lump-sum award was made in the amount of $289.50, covering the period from the date of entitlement (September 1965) to the date of award (February, 1966). Upon receiving notice of the OASDI award to Fanny, the Department of Public Welfare sought reimbursement for the assistance attributable to Fanny's inclusion in the family unit. The department calculated that the reimbursement owed by Fanny for the period covered by the OASDI lump-sum award was $135.68. When appellant received payment of the award, the department claimed and collected this amount from the proceeds. Appellant's first contention is that the Department of Public Welfare was prohibited by Social Security legislation from asserting a reimbursement claim to all or

any part of the OASDI payment for Fanny, and she seeks to recover the sum of $135.68.

Because of the monthly award that Fanny was to receive in the future, the department, beginning in March 1966, no longer considered her a recipient, but public assistance was continued to the remainder of the family. In determining the amount of assistance to be paid to the family, the department concluded that a part of Fanny's monthly OASDI payment was "available to the rest of the family." This calculation reduced the monthly amount of public assistance that otherwise would have been paid to appellant for herself and her other children. In January 1969, it was belatedly discovered that the department's regulations had been changed and that, effective October 1, 1967, the department no longer followed the practice of attributing OASDI payments to anyone other than the recipient. The department thereupon paid appellant the sum of $567.40, which represented the additional family assistance she would have received from October 1, 1967, to January 30, 1969, had Fanny's OASDI payments not been considered in calculating the amount of assistance payable to the remainder of the family. The department, however, refused to adjust the amount of the assistance grant to the family from March 1, 1966, to September 30, 1967, contending that during this period it was correct in following the regulations that were in effect at that time.

Appellant contends that the department committed legal error by attributing any part of Fanny's OASDI income to the family at any time, and she seeks to recover the sum of $499.70. This is the amount of additional assistance that appellant and her family would have received during the earlier period if her conclusion is correct.

As to appellant's first contention, we conclude that the Department acted properly in obtaining reimburs-

ment of the assistance granted to Fanny for the period covered by the lump-sum Social Security payment. Appellant had agreed in writing to reimburse the department for assistance, and she did so upon the request of a department official when the OASDI payment was received. We believe that Commonwealth v. Garlick, 26 D. & C. 2d 389 (1961), cited as controlling in Klaric Petition, 27 D. & C. 2d 93 (1961), correctly decided that the Federal exemption of Social Security benefits from claims of creditors (42 U.S.C.A. §407) does not apply to the Commonwealth's claim for reimbursement for assistance granted, especially where there was an agreement to repay the Commonwealth.[1]

Federal cases construing the exemption hold that the statute refers to future benefits and not to accrued Social Security payments: Beers v. Federal Security Administrator, 172 F. 2d 34, 36 (2nd cir., (1949); Ewing v. Gardner, 185 F. 2d 781, 784 (6th Cir., 1950), reversed in part on other grounds, 341 U.S. 321, 71 S. Ct. 684 (1951). Future Social Security payments were not claimed in this case. In a similar case, the Texas Court of Civil Appeals held that "federal law does not attempt to assert any control over the disposition to be made of social security payments after such have been paid into the hands of a lawful guardian for the benefit of minor children." Texas Baptist Children's Home v. Corbitt, 321 S.W. 2d 610, 613 (Tex. Civ. App., 1959). See also Ponath v. Hedrick, 22 Wis. 2d 382, 126 N.W. 2d 28 (1964).

---

[1] 42 U.S.C.A. §407 provides:

"The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law."

We believe the department properly obtained reimbursement for assistance granted Fanny during the period covered by the delayed but accrued Social Security payment. In paying public assistance to a minor who is entitled to receive income from Social Security, the Commonwealth is, in fact, paying an obligation of the Federal government. Social Security benefits are not voluntary payments and are clearly designed to provide the recipient with an income, thus removing the qualification and/or need for public assistance.

In Commonwealth v. Thompson, 22 D. & C. 2d 236 (1960), the specific holding of the court was that a Social Security payment deposited and credited to the recipient's bank account has lost its identity as a Social Security benefit. The court held that such funds represent a debt due by the bank to the owner of the account, and in such circumstances can be attached by the Commonwealth to satisfy a claim for reimbursement of public assistance. In the course of its opinion, the court recognized the validity of the department's position in this case, page 239:

"If defendant were now permitted to retain the social security benefits, she would in effect be receiving double benefits for the same period of time. This was certainly not the intention of the Social Security Administration nor the Department of Public Welfare of the Commonwealth, and defendant specifically agreed that she would return to the Commonwealth the assistance she had received from the Commonwealth when she received her accumulated social security benefits. If we were to decide that the Commonwealth could not attach the funds in question, our decision could and probably would have far reaching results in that many widows and orphans might be deprived of assistance from the Commonwealth during the period of delay in the start of social security benefits if the Commonwealth knew

that it could not recoup the assistance so granted. *Having received the bounty of the Commonwealth, defendant should unhesitatingly repay the Commonwealth out of her social security benefits, just as she promised to do."* (Italics supplied.)

It must be noted that this is not a proceeding wherein the Commonwealth is attempting to obtain reimbursement from Social Security benefits, for it has already been reimbursed. The issue here is appellant's right to recover the amount she has paid pursuant to her reimbursement agreement. Considering the matter in this posture, we have found nothing to support her contention.

We have reviewed the many cases cited by appellant to support her position, but conclude that they are factually or legally distinguishable from the holding of Garlick, supra.

Appellant relies heavily on Algier Estate, 43 D. & C. 2d 351 (1966), but we do not find it support for her case. In Algier, supra, the Commonwealth asserted a claim for assistance granted to decedent, where the only asset in the estate from which the claim could be paid was a lump sum Social Security benefit payment. The claim of the Commonwealth was not allowed, although the exact reason for the holding is unclear. However, the Algier court did not contradict the holding of Garlick, supra, and specifically distinguished the two cases. The court noted that, unlike Garlick, decedent in Algier had not signed an agreement to reimburse the Commonwealth.

Effective October 1, 1967, the department adopted new regulations which provided that a minor's Social Security benefit could not be considered available to meet the needs of the rest of the family unit. Prior to that date, the regulations provided that if the benefit exceeded the child's pro rata share of the public assistance entitlement, the excess could be

considered as a resource available to the rest of the family. Fanny's monthly Social Security payment, in fact, exceeded her pro rata share of the entitlement, and the department attributed the excess as available to the family. This calculation obviously reduced the amount of assistance granted to appellant by the amount of the excess. Appellant argues that the regulations in effect prior to October 1, 1967, were contrary to law, and she seeks to recover additional assistance which she contends should have been paid her from March 1966 to September 1967.

We have carefully studied appellant's argument to determine whether the department's method of calculating family benefits prior to October 1, 1967, violated some legal right of appellant at that time.

It has been correctly stated by legal authorities that there is no obligation at common law on the State to furnish relief to the poor. Accordingly, such obligation, if any, must rest upon statute. To what extent and under what circumstances poor people shall be relieved at the expense of the public are purely legislative questions, and courts cannot exceed the legislative will. Public charity is bestowed as a duty, not as an obligation. Therefore, the extent of relief and the necessity for it are left to the discretion and judgment of the officers charged with the care of the poor. No indigent, or class of indigents, can acquire a vested right to be cared for by the public in any particular manner. See 41 Am. Jur., Poor and Poor Laws, §§31, 35.

In determining whether the regulations of the department violated some right of appellant, it must be pointed out that the receipt of assistance is not a constitutional right: Smith v. Reynolds, 277 F. Supp. 65 (E. D. Pa., 1967), affirmed sub. nom. Shapiro v. Thompson, 394 U. S. 618, 89 S. Ct. 1322 (1969). Nor is public welfare a property right of the recipient:

"Relief or public assistance is not a vested property right held by any person or group of persons: Russell v. City of Providence, 7 R. I. 566. It is a gratuity from the state made to those whose status and condition measured by standards promulgated by the State Board of Public Assistance show an urgent need for financial aid in order to maintain the highest degree of public health, morals and general welfare. It is not merely an aid to an individual, but an aid to preserve community life and society, and its administration must be guided by standards of need prescribed by duly authorized bodies, here the State Board of Public Assistance": Sweeney v. State Board of Public Assistance, 36 F. Supp. 171, 174 (M. D. Pa., 1940), affirmed 119 F. 2d 1023 (3rd Cir., 1941), cert. denied 314 U. S. 611, 62 S. Ct. 74 (1941); accord, Jefferson v. Hackney, 304 F. Supp. 1332, 1335 (N. D. Texas, 1969).

As to eligibility for and amount of public assistance, the Pennsylvania Public Welfare Code provides as follows:

"The department shall establish rules, regulations and standards, consistent with the law, as to eligibility for assistance and as to its nature and extent . . .": 62 PS §403.

The establishment of rules, regulations and standards involves agency discretion and Pennsylvania courts will not review administrative discretion in the absence of fraud, bad faith, abuse of power, etc. The scope of review of the action of an administrative agency was announced in Blumenschein v. Pittsburgh Housing Authority, 379 Pa. 566, 109 A. 2d 331 (1954), appeal dismissed 305 U. S. 806, 76 S. Ct. 68 (1955).[2]

[2] The Blumenschein case has been cited with approval in Washington Park, Inc. Appeal, 425 Pa. 349, 353, 229 A. 2d 1, 3 (1967); Eways v. Board of Road Supervisors, 422 Pa. 169, 171, 220 A. 2d 840, 841 (1966).

" . . . the scope of that review [judicial review of administrative action] is limited to the determination of whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions": Page 573.

Appellant argues that the pre-October 1, 1967, regulations reduced the amount of her assistance and that she was forced by this circumstance to consume part of her daughter's OASDI payments to support her family. She contends that, as a practical matter, she was thereby compelled to violate section 408(e) of the Social Security law, which restricts the use of OASDI funds to the beneficiary.[3] She also states that the situation required her minor child to contribute to the family support, contrary to the requirements of the Pennsylvania Support Law.

We do not deem it proper for us to pass upon appellant's responsibility under these laws, for this is not the issue of this case. The court can appreciate and sympathize with the apparent practical dilemma described by appellant, but neither the circumstances nor our sympathy can provide us with jurisdiction that does not exist. The amount or extent of assistance benefits and the methods used for their determination are legislative or administrative matters. It has been held that it is not the prerogative of a court to determine whether or not the amount decided upon by the Department of Welfare is sufficient to support beneficiaries. In the case of In re Eaton,

---

[3] "Whoever . . . having made application to receive payment under this subchapter for the use and benefit of another and having received such a payment, knowingly and willfully converts such a payment, or any part thereof, to a use other than for the use and benefit of such other person; shall be guilty of a misdemeanor. . .": 42 U.S.C.A. §408(e).

37 D. & C. 191 (1940), the court observed, at page 196:

"If the schedules are not sufficient to enable the dependents to maintain decent and healthful standards of living . . . the remedy is with the legislature."

This court finds no authority to declare the department's regulation invalid as a matter of law. In Patten v. San Diego County, 106 Cal. App. 2d 467, 235 P. 2d 217 (1951), the court held that the type of relief granted and the amount and time of payments were within the discretion of the county board of supervisors. The court emphasized that no court has authority to interfere with administrative determinations of a board of supervisors granting relief absent "a clear showing of fraud or arbitrary or capricious conduct."

In our view, the substance of appellant's position goes to the adequacy of her family grant. There is no guarantee known to us that public assistance benefits will prove sufficient to support every family, and, as we have noted, the amount of assistance or the means of determining the same are legislative matters. The protection afforded by the courts is that the standards adopted by administrative bodies will be applied impartially and uniformly. See Founders Hall Foundation Liquor License Case, 205 Pa. Superior Ct. 277, 209 A. 2d 15 (1965), and Commonwealth v. Frost, 295 Ky. 137, 172 S. W. 2d 905 (1943). Nothing in the record indicates that the department's regulations prior to October 1, 1967, were not so applied.

We find no authority to support appellant's argument and we dismiss her appeal.

## ORDER

And now, May 29, 1970, the appeal of Ethel Early from the decision of the Secretary of Public Welfare dated September 3, 1969, is dismissed.