153 Wis.2d 412 (1990)
451 N.W.2d 416
IN the INTEREST OF A.L.W., a Person Under the Age of 18 Years: J.G.W., Appellant-Petitioner,
v.
OUTAGAMIE COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent.
No. 88-0255-FT.
Supreme Court of Wisconsin.
Argued September 6, 1989.
January 4, 1990.
Decided February 22, 1990.
*414 For the appellant-petitioner there were briefs by Vance M. Waggoner and Denissen, Kranzush, Mahoney & Ewald, S.C., Green Bay, and oral argument by Mr. Waggoner.
For the respondent there were briefs and oral argument by Michael J. Balskus, assistant district attorney.
*415 CHIEF JUSTICE HEFFERNAN.
This is a review of an unpublished decision of the court of appeals, which affirmed the decision of the circuit court for Brown county, William J. Duffy, circuit judge, that the Department of Health and Social Services was authorized by statute to promulgate a rule that takes the income of non-liable family members into consideration in determining the liable family member's ability to pay for social services rendered to a dependent from a prior marriage. In addition, we address whether sec. 766.55(2)(c)2 of the Marital Property Act prohibits consideration of the non-liable spouse's income in satisfying a pre-determination-date obligation of the other spouse. We affirm the decision of the court of appeals.
The facts are not in dispute. A.L.W. is the adopted daughter of J.G.W., the petitioner, and his former wife, N.R.W. N.R.W. died in March 1984, and J.G.W. subsequently married his current wife, V.W., in January of 1985. V.W. is neither the biological nor adoptive parent of A.L.W. J.G.W. is the only person liable to the Department for services provided to A.L.W.
On November 19, 1985, the Outagamie county circuit court found A.L.W. to be a Child in Need of Protection and Services. The court ordered that A.L.W. be placed outside of her home in a residential treatment center. The court also ordered that parental support be determined by the Outagamie Department of Social Services, retroactive to the date of placement.
The Department issued four orders to J.G.W. requiring him to make monthly payments to the Department for services rendered to A.L.W.[1] J.G.W. appealed *416 each order to the circuit court. At a hearing before Judge William J. Duffy it was established that the Department applied the uniform fee schedule, which combined the income of J.G.W. and of V.W., his wife, and considered that J.G.W.'s family has four dependents (J.G.W., V.W., A.L.W., and V.W.'s daughter) to determine his ability to pay. The circuit court held that the Department had statutory authority to consider non-liable family members' income in determining the liable person's ability to pay. J.G.W. disagreed and appealed the decision of the circuit court. The court of appeals affirmed the circuit court's decision in an unpublished decision and order dated August 23, 1988. J.G.W. petitioned this court for review of the court of appeals decision and, in addition, asked this court to consider the effect of sec. 766.55(2)(c)2 of the Marital Property Act upon this case.[2] We granted the petition for review.
*417 J.G.W. asserts two issues for review. He claims that Chapter 46 of the Wisconsin Statutes does not authorize the Department to consider the income of non-liable family members in determining how much he owes the Department for services rendered to A.L.W. In addition, J.G.W. asserts that the Marital Property Act prohibits the Department from considering his non-liable spouse's income in order to determine his liability for a pre-determination-date obligation.
[1]
First we address J.G.W.'s argument that Wis. Admin. Code secs. HSS 1.03(11) and 1.01(2)(e) exceed statutorily conferred authority by imposing liability for the care of his adopted daughter on his spouse, who is not made liable under secs. 46.03(18) or 46.10, Stats. In In Matter of Guardianship of Klisurich, 98 Wis. 2d 274, 281, 296 N.W.2d 742 (1980), this court held that the legislative directive to establish fee schedules and guidelines regarding ability to pay was a lawful delegation of authority to the Department. In this case, we are only concerned with the Department's authority to act within the confines of the statute, not with the legislative authority to impose liability upon relatives for the support of other dependent relatives. In determining whether an administrative agency has exceeded its statutory authority in promulgating a rule, we must look to the enabling statute to determine whether there is express or implied authorization for the rule. Brown County v. H&SS Department, 103 Wis. 2d 37, 48, 307 N.W.2d 247 (1981).
Chapter 46 of the Wisconsin Statutes imposes liability upon certain family members for social services rendered by the Department to other family members. The purpose of secs. 46.03(18) and 46.10, Stats., is to recoup the costs of providing social services and treatment *418 by requiring liable family members to pay their fair share. In Matter of Guardianship of Klisurich, 98 Wis. 2d at 281. Section 46.03(18)(a) directs the Department to establish a uniform system of fees for services provided by the Department.[3] Pursuant to this delegation, the Department promulgated a schedule of fees which takes into consideration the total family income and the number of dependents to arrive at a maximum monthly fee which the liable person must pay.
Under sec. 46.03(18)(b), Stats., J.G.W. is liable for services rendered to his adopted daughter because he is a parent under that section.[4] However, J.G.W.'s wife, V.W., is neither the biological, nor the adoptive, parent of A.L.W. and, therefore, is not a liable person under sec. 46.03(18). Nevertheless, sec. HSS 1.03(11) Wis. Adm. Code (1985) bills the liable family member on the basis of the family's ability to pay.[5] "Family" is defined in *419 Section HSS 1.01(2)(e) Wis. Adm. Code (1985) as an adult, the adult's spouse, and any other persons who meet internal revenue service standards as their dependents. Under this scheme, the Department considers all family income, including non-liable family members' income, in determining the liable family member's ability to pay.
The court of appeals held that sec. 46.03(18), Stats., provided authority for the Department to consider the family's financial resources, the number of dependents, and each family member's income in determining the responsible person's ability to pay. We conclude that both secs. 46.03(18) and 46.10(3) require that the Department consider the liable person's family resources *420 in determining their ability to pay. Section 46.10(3) provides:
After investigation of the liable persons' ability to pay, the department shall make collection from the person who in the opinion of the department under all of the circumstances is best able to pay, giving due regard to relationship and the present needs of the person or of the lawful dependents . .
Section 46.03(18)(c), Stats., provides in part:
The department shall make collections from the person who in the opinion of the department is best able to pay, giving due regard to the present needs of the person or of his or her lawful dependents. The department may bring action in the name of the department to enforce the liability established under par. (b).
[2]
By directing the Department to give due regard to relationship and the present needs of the lawful dependents, both secs. 46.10(3) and 46.03(18) authorize the Department to consider non-liable family members' income in determining a liable family member's ability to pay.
We find the case of Ponath v. Hedrick, 22 Wis. 2d 382, 389, 126 N.W.2d 28 (1964), instructive. In Ponath, this court interpreted a statute which, much like secs. 46.03(18) and 46.10, Stats., imposed liability upon relatives for the cost of supporting dependent family members according to their ability to pay. In determining Mrs. Hedrick's ability to pay for the support of her aged mother, the court stated that it could properly consider her husband's income and economic position.[6]

*421 If the wife has an income that can be considered, then the trial court, under sec. 52.01, Stats., is free to consider her husband's economic position both in terms of his worth and his income. This is because the court should consider these factors in determining the extent to which the husband has sufficient income or other economic position in order for him to assume responsibility for his wife's basic needs, thus freeing her income for possible consideration as an ability to pay on her part for a portion or all of the support furnished to a dependent relative under the statute.
But since, in the case at bar, Mrs. Hedrick had no income that could be legally considered in charging her with a duty to support her mother, there was no basis for the trial court to consider her husband's economic position or income.
22 Wis. 2d at 390.
[3]
Although the court was interpreting another statute, the principles are the same. When the legislature instructs an agency or a court to consider an individual's ability to pay, giving due regard to that person's lawful dependents, it is appropriate to consider the income of each family member.
The family income concept promulgated pursuant to secs. HSS 1.01(2)(e) and 1.03(11), Wis. Adm. Code *422 (1985) follows the legislature's directive to determine the liable person's ability to pay by considering both the needs and the resources of each family member. J.G.W. suggests that the legislature only contemplated consideration of his family's needs and not their contributions to the family. This is an unreasonable interpretation of the legislature's directive to determine the liable person's ability to pay. As this court noted in the Ponath case, if a family member is contributing to the support of the liable family member, that allows a greater proportion of the liable person's income to be used for the support of the dependent relative. That is, their ability to pay increases. If the Department were to look only at how much the liable person's family costs him or her without considering how much the family contributes to that person's support, the Department would not be following the legislative mandate to determine the person's ability to pay.
[4]
Furthermore, we disagree with petitioner that HSS secs. 1.01(2)(e) and 1.03(11) of the Wisconsin Administrative Code impose liability on J.G.W.'s non-liable spouse. Considering the family's resources does not mean that the individual's liability is shifted to the nonliable family members. It is his ability to pay that is determined on the basis of his family's income. It is only J.G.W.'s income which may be used to satisfy his obligation to the Department. HSS sec. 1.03(14)(a), Wis. Adm. Code (1985), limits J.G.W.'s liability to the sum of his unearned income and one-half of his earned income.[7] In *423 addition, if the calculated amount due would create a hardship on the family, a lower payment may be authorized. See sec. HSS 1.03(14)(b), Wis. Adm. Code. These safeguards insure that a responsible person's liability is limited to that individual's income. Therefore, we conclude that HSS secs. 1.01(2)(e) and 1.03(11) (1985), which utilize the family income concept in order to determine a liable person's ability to pay for services rendered to a dependent relative are authorized by the legislature in secs. 46.10 and 46.03(18), Stats.
J.G.W. also argues that sec. 766.55(2)(c)2 of the Marital Property Act prohibits the Department from satisfying his obligations which arose prior to January 1, 1986, with his non-liable spouse's income.[8] Sections 766.55(2)(c)1 and 2, Stats., prohibit the use of a new spouse's income to satisfy an obligation incurred by the other spouse either prior to the couple's marriage or prior to enactment of the Marital Property Act. Petitioner asserts that this obligation arose prior to January 1, 1986 (effective date of the Marital Property Act), and *424 therefore, sec. 766.55(2)(c)2 applies. Section 766.55(2)(c) provides in part:
(2) After the determination date all of the following apply:
(c) 1. . . . .
2. An obligation incurred by a spouse before, on or after January 1, 1986, that is attributable to an obligation arising before January 1, 1986, or to an act or omission occurring before January 1, 1986, may be satisfied only from property of that spouse that is not marital property and from that part of marital property which would have been the property of that spouse but for the enactment of this chapter.
Under sec. 766.55(2)(c)2, Stats., petitioner correctly states that only his individual salary, his social security checks, and his interest income may be used to satisfy his obligation to the Department because it is a pre-Act obligation. Petitioner then claims sec. 766.55(2)(c)2 prohibits the Department from considering any of his wife's earned or unearned income in determining his liability to the Department. Petitioner argues that, by considering his non-liable spouse's income in determining his ability to pay, the Department is in effect using her income to "satisfy" his pre-Act obligation in violation of sec. 766.55(2)(c)2. We disagree.
[5, 6]
Whether or not the legislature's use of the word, "satisfy," in sec. 766.55(2)(c)2, Stats., was intended to prohibit the Department from considering the resources of a non-liable spouse in determining a liable person's ability to pay for a dependent relative's care is ambiguous. When a statute is ambiguous, we turn to the rules of statutory construction to determine the legislative intent of that statute. Kollasch v. Adamany, 104 Wis. 2d 552, 563, 313 N.W.2d 47 (1981). When construing a statute, *425 the court must consider it in relation to its scope, history, context, subject matter and object to be accomplished or remedied. Id.
The object to be accomplished by sec. 766.55(2)(c)2, Stats., is to insure that premarital or pre-Act creditors do not receive a windfall due to enactment of the Marital Property Act.[9] The concern of sec. 766.55, as reflected in the use of the term, "satisfy," is to prevent premarital creditors from having access to the non-obligated spouse's income or assets which were attributed to the obligated spouse by virtue of enactment of the Marital Property Act.
[7]
Prior to enactment of the Marital Property Act, the legislature authorized consideration of the non-obligated family member's income for purposes of determining the liable family member's ability to pay, but did not authorize the use of the non-liable family members' income to "satisfy" the debt. See secs. 46.10(3) and 46.03(18), Stats. 1973, and Ponath v. Hedrick, supra. The actual liability of the responsible family member was limited to that individual's income. Therefore, under the former law, none of the non-obligated spouse's income could be used to "satisfy" the obligated spouse's debt, although the non-obligated spouse's income could be considered in determining the obligated spouse's ability to pay. J.G.W. *426 asserts that, when the legislature passed sec. 766.55(2)(c)2 it intended to change existing law so that whatever windfall existed for creditors prior to the Marital Property Act would be removed. We find no support for this interpretation of sec. 766.55. To the contrary, the legislature's concern was simply to insure that enacting the Marital Property Act would not create a windfall for pre-Act creditors by imputing the non-liable spouse's income or assets to the liable spouse. See note 9 supra. On the basis of this history, we therefore conclude that the legislative prohibition against using a on-liable spouse's income to "satisfy" a pre-marital or pre-Act obligation in sec. 766.55(2) consistent with prior legislative enactments, was not intended to prohibit consideration of the non-liable spouse's income in determining the liable spouse's ability to pay under Chapter 46 of the Wisconsin Statutes.
Finally, J.G.W. relies on this court's decisions in In re Marriage of Poindexter, 142 Wis. 2d 517, 419 N.W.2d 223 (1988), and In re Marriage of Burger v. Burger, 144 Wis. 2d 514, 424 N.W.2d 691 (1988), which hold that none of a new spouse's income is available under the Marital Property Act to satisfy maintenance or support obligations of a prior marriage. J.G.W. argues, that, under Poindexter, the non-obligated spouse's income cannot even "enhance" the assets available to satisfy a pre-marital obligation. 142 Wis. 2d at 542. We agree with petitioner's interpretation of these cases, insofar as they prohibit the use of the non-obligated spouse's income to "satisfy" the obligated spouse's pre-Act obligations. However, both Poindexter and Burger presented a different situation from this case and, therefore, do not provide support for J.G.W.'s position. The obligated spouse in both of those cases had no income. The question presented was whether the non-obligated spouse's *427 income or assets could be imputed to the obligated spouse for purposes of satisfying the obligated spouse's premarital obligations.
[8]
In this case, J.G.W. has his own income. If J.G.W. had no income, the Department would not be able to use any of V.W.'s income to "satisfy" J.G.W.'s obligation, regardless of how much money V.W. might have. That was precisely the result reached in Poindexter, Burger, and Ponath v. Hedrick. Our holdings in Poindexter and Burger are consistent with the requirement that none of the non-obligated spouse's income may be used to "satisfy" the obligated spouse's pre-Act obligation even though the non obligated spouse's income may be taken into consideration in determining the liable spouse's ability to pay.
In summary, we conclude that the Department has not exceeded its statutorily conferred authority by promulgating HSS secs. 1.01(2)(e) and 1.03(11) (1985), which implement the family income concept in determining a liable person's ability to pay for a dependent relative's care. We also conclude that sec. 766.55(2)(c)2, Stats., does not prohibit the Department from considering the non-liable spouse's income in determining the liable spouse's ability to pay under HSS secs. 1.03(11) and 1.01(2)(e), Wis. Adm. Code (1985).
By the Court.Decision affirmed.
NOTES
[1] The initial order was issued on December 27, 1985 requiring petitioner to pay $921.18 for services rendered to A.L.W. beginning on November 25, 1985. Three subsequent amended orders were issued on February 25, 1986 ($1001.54), June 2, 1986 ($1192.21), and July 3, 1986 ($1148.67, $1044.17 and $1007.17), which adjusted the petitioner's liability due to a change in his economic circumstances.
[2] Petitioner raised this issue for the first time in his petition for review before this court. This case was first heard on oral argument on September 6, 1989. At that oral argument the parties did not fully address the marital property issue. On September 11, 1989, this court ordered the parties to further brief the marital property issue and invited the Family Law Section of the State Bar of Wisconsin to file an amicus brief discussing the impact of the Marital Property Act on this case. The case was again scheduled for oral argument on January 4, 1990. No amicus brief was submitted. Although petitioner has waived his right to have this issue reviewed, we choose to consider the effect of the Marital Property Act on this case because it is a question of law, the issue has now been fully briefed, and it is an issue of sufficient public interest to merit decision. See Wirth v. Ehly, 93 Wis. 2d 433, 444, 287 N.W.2d 140 (1980).
[3] Section 46.03(18)(a), Stats., provides in part:

The department of health and social services shall establish a uniform system of fees for services provided or purchased by the department of health and social services, a county department . . A county department under s. 46.215, 46.22, 51.42 or 51.437 shall apply the fees which it collects under this program to cover the cost of such services.
[4] Section 46.03(18)(b), Stats., provides:

Any person receiving services provided or purchased under par. (a) or the spouse of the person and, in the case of a minor, the parents of the person, . . . shall be liable for the services in the amount of the fee established under par. (a) . .
[5] Section HSS 1.03(11) and (12), Wis. Adm. Code (1985), provide:

(11) BILLING ON THE BASIS OF ABILITY TO PAY.
(a) A responsible party who provides full financial information and authorizations for billing all applicable insurance shall be billed on the basis of the family's ability to pay.
(b) For each family, ability to pay shall be determined in the following manner:
1. The annual gross income of family members shall be determined and totaled except that the earned income of any child who is a full time student or a part-time student but not a full time employe shall be excluded. Income from self-employment or rent shall be the total net income after expenses. The income of any family member in a residential setting is treated separately under this rule.
2. The monthly average income shall be computed by dividing the annual gross income by 12.
3. Monthly payments from court ordered obligations shall be subtracted from monthly average income.
4. For services other than care to minors . .
(12) MAXIMUM MONTHLY PAYMENT. A family providing full financial information shall be billed at a monthly rate that does not exceed the maximum amount computed by means of the following formulas:
. . .
(c) Other services for children. For other services to children, the maximum monthly payment for a parent shall be computed as follows:
. . .
3. The department shall publish a schedule annually for agencies to compute maximum monthly payment rates under this paragraph.
[6] See sec. 52.01, Stats. (1956), which provided in part:

(1) The parent, spouse and child of any dependent person (as defined in s. 49.01) who is unable to maintain himself shall maintain such dependent person, so far as able, in a manner approved by the authorities having charge of the dependent, or by the board in charge of the institution where such dependent person is; but no child of school age shall be compelled to labor contrary to the child labor laws.
Section 52.01, Stats. (1956) was subsequently renumbered sec. 49.90 and amended by 1985 Act 29, secs. 1108 to 1114.
[7] Section HSS 1.03(14)(a) provides:

In cases where family members who contribute to the family income are not responsible parties for the liability being charged to the family, the maximum monthly payment rate shall not exceed the sum of the unearned and one-half the earned income of responsible party or parties, less an amount equal to that used by the Wisconsin AFDC program for work related expenses.
[8] The initial order was entered on December 27, 1985, and the three amended orders were entered after January 1, 1986. Petitioner argues that because the latter three orders were "amended orders" they relate back to the first or "initial order" which was entered prior to January 1, 1986, the parties' determination date under sec. 766.01(5)(c), Stats. We agree with petitioner that these subsequent orders should relate back to the date of the first order because these latter orders simply modified the amount that petitioner owed due to a change in his economic circumstances. Therefore, we conclude that all of the orders constitute an obligation which arose prior to January 1, 1986, the parties' determination date.
[9] The comments to sec. 8 of the Uniform Marital Property Act, upon which sec. 766.55, Stats., is based, provide in part:

This prevents a windfall to the premarital creditor by a marriage, for no interest in marital property attributable to the effort of the new spouse of the obligated party becomes available to enhance the assets available to that creditor to satisfy a debt of the obligated spouse. The objective is that the marriage should be neutral as far as the premarital creditor is concerned, neither adding to nor detracting from the assets available for satisfaction of the claim.