**Willie R. HAMBRICK, Plaintiff**

v.

**FIRST SECURITY BANK, Defendant.**

No. 4:04CV00067 JLH.

United States District Court,
E.D. Arkansas,
Western Division.

Sept. 17, 2004.

Robert M. Abney, District Judge, Attorney at Law, Des Arc, AR, for Plaintiff.

Buck Canyon Gibson, Millar Gibson, P.A. Searcy, AR, for Defendant.

### *OPINION AND ORDER*

HOLMES, District Judge.

Willie Hambrick alleges that First Security Bank violated the anti-assignment provision of the Social Security Act, 42 U.S.C. § 407, as well as Arkansas law, when it offset funds deposited directly by the Social Security Administration into Hambrick's closed bank account against an account overdraft and an amount due on an unpaid promissory note. First Security Bank filed a motion for summary judgment (Docket # 7), arguing that it acted pursuant to the set-off provisions contained in the contract for the bank account and in the promissory note. For the reasons stated below, First Security Bank's motion for summary judgment is GRANTED in part and DENIED in part.

A court should grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis of its motion and identifying the portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Group Health Plan, Inc. v. Philip Morris USA, Inc.,* 344 F.3d 753, 763 (8th Cir.2003). When the moving party has carried its burden under Rule 56(c), the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1985) (quoting Fed.R.Civ.P. 56(c)). The non-moving party sustains this burden by showing that "there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505. When a non-moving party cannot make an adequate showing on a necessary

element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. In deciding a motion for summary judgment, the court must view the facts and inferences in the light most favorable to the party opposing summary judgment. *Boerner v. Brown & Williamson Tobacco Corp.,* 260 F.3d 837, 841 (8th Cir.2001).

The facts are, for the most part, undisputed. On June 24, 1996, Hambrick and his wife opened a joint checking account, account # 1431390, with First Security Bank. The account agreement signed by Hambrick contained the following set-off provision:

> You each agree that we may (without prior notice and when permitted by law) set off the funds in this account against any due and payable debt owed to us now or in the future, by any of you having the right of withdrawal, to the extent of such persons' or legal entity's right to withdraw. If the debt arises from a note, "any due and payable debt" includes the total amount of which we are entitled to demand payment under the terms of the note at the time we set off, including any balance the due date for which we properly accelerate under the note.

Hambrick overdrew this account until it had a negative balance of $405.40. He alleges that First Security Bank closed this account on March 24, 2003, due to the overdraft. In response to the motion for summary judgment, Hambrick has produced a letter dated June 11, 2003, from Brenda Reynolds of First Security Bank stating this fact. The account agreement attached to First Security Bank's motion bears the date, March 24, 2003, in a handwritten notation in the top right corner underneath the notation, "CO $405.40." In its answer to Hambrick's complaint, First Security Bank denied that it closed the account, but it has produced no evidence contradicting Hambrick's assertion.

Hambrick was also indebted to First Security Bank pursuant to a promissory note that he and his wife executed in favor of First Security Bank on May 31, 2001, in the amount of $37,600.00. The note was secured by a lien on Hambrick's mobile home and a mortgage on his real property. The note gave First Security Bank a right of set-off in the case of default. In its relevant portion, the note stated:

> I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.
>
> "Right to receive money from you" means:
>
>> (a) any deposit account balance I have with you;
>>
>> (b) any money owed to me on an item presented to you or in your possession for collection or exchange; and
>>
>> (c) any repurchase agreement or other nondeposit obligation.
>
> "Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

Hambrick defaulted on the note. As a result, First Security Bank accelerated the sum due and foreclosed on the real and personal property. After the sale of this property, an indebtedness on the note in the amount of $19,226.30 remained unpaid. Hambrick asserts that First Security Bank failed to pursue a deficiency judgment, but neither party introduced records from the foreclosure proceeding to show whether or not First Security Bank's claims for the unpaid balance were merged into the foreclosure judgment.

On June 11, 2003, which apparently was after the sale of the property in foreclosure, the Social Security Administration made a direct deposit into account 1431390 in the amount of $23,562.33. This amount constituted a lump sum payment of accrued Social Security disability benefits due to Hambrick. Upon acceptance of the funds into account 1431390, First Security Bank applied the deposit as a set-off against the account overdraft and the unsatisfied portion of the note. After the set-off, it forwarded the remaining balance of $3,930.63 to Hambrick's attorney.

## SOCIAL SECURITY ACT

Section 407(a) of the Social Security Act states:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407. Section 407(a) prohibits the transfer or assignment of any future payment of Social Security benefits, and it also protects "moneys paid or payable" from "execution, levy, attachment, garnishment, or other legal process." 42 U.S.C. § 407(a). Hence, Congress saw fit to provide, first, that future payments of Social Security benefits are not transferrable or assignable, and, secondly, that moneys paid or payable are exempt from execution, levy, attachment, garnishment, other legal process, or operation of bankruptcy and insolvency laws. *See In the Matter of Capps,* 251 B.R. 73 (Bankr.D.Neb.2000). Section 407 thus provides comprehensive protection that places payments of Social Security benefits beyond the reach of creditors. Such protection is consistent with the purpose behind the Social Security Act, the "protection of its beneficiaries from some of the hardships of existence." *Mazza v. Sec'y of Dep't of Health and Human Serv.,* 903 F.2d 953, 960 (3rd Cir. 1990) (quoting *U.S. v. Silk,* 331 U.S. 704, 711, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947)). *See also Helvering v. Davis,* 301 U.S. 619, 641, 57 S.Ct. 904, 81 L.Ed. 1307 (1937).

■ First Security Bank argues that § 407(a) does not apply to lump sum payments of accrued benefits payable under that Act. However, § 407 makes no distinction between lump sum payments and other payments. Section 407 "imposes a broad bar against the use of any legal process to reach *all social security benefits.*" *Philpott v. Essex County Welfare Bd.,* 409 U.S. 413, 417, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973) (emphasis added). Hence, § 407 reaches "all Social Security benefits"; it does not exempt lump sum payments from its protection. In *Philpott,* the Supreme Court applied § 407 to a lump sum payment of retroactive Social Security disability insurance benefits that had accrued over a period of more than two years. Section 407 makes no distinction between accrued funds and regular monthly payments. "The protection afforded by § 407 is to 'moneys paid.' " *Id.* at 416, 93 S.Ct. 590.

■ First Security Bank next argues that summary judgment should be granted because it acquired the Social Security moneys pursuant to its contractual right under the account and note agreements, rather than by writ of garnishment, attachment, execution, or by means of any other formal judicial act proscribed by § 407. However, § 407 protects not only against legal processes, it also prohibits the transfer or assignment of future payments of Social Security benefits. An agreement, even one voluntarily entered into by Hambrick, that transferred or assigned his rights to future payment of Social Security benefits to First Security

Bank to offset debts owed would violate § 407. Hambrick could, consistent with § 407, make payments on his debts from his Social Security benefits, but he could not transfer or assign payments that he had not received at the time of the agreement. The set-off provisions in the account agreement and the promissory note cannot lawfully apply to payments of Social Security benefits that Hambrick had not received when those agreements were executed. In light of the Supreme Court's direction to construe federal benefit statutory schemes liberally in order to "protect funds granted by the Congress for the maintenance and support of the beneficiaries thereof" (*Porter v. Aetna Cas. & Sur. Co.*, 370 U.S. 159, 162, 82 S.Ct. 1231, 8 L.Ed.2d 407 (1962)), this Court is not persuaded by First Security Bank's argument that § 407 should be interpreted in any other way. *See also Capps*, 251 B.R. at 75.

Other courts have applied § 407 to bank set-offs and have held that Social Security benefits are protected against this self-help remedy. *See Tom v. First Am. Credit Union*, 151 F.3d 1289, 1291–93 (10th Cir.1998); *Capps*, 251 B.R. 73. *But cf. Frazier v. Marine Midland Bank*, 702 F.Supp. 1000 (W.D.N.Y.1988); *In re Gillespie*, 41 B.R. 810 (Bankr.D.Colo.1984); *Lopez v. Washington Mutual Bank*, 302 F.3d 900 (9th Cir.2002). The Tenth Circuit Court of Appeals found no principled difference between using the court system to reach Social Security benefits and using a self-help remedy to offset those funds against a debt:

> We can see no reason why Congress would, on the one hand, choose to protect Social Security beneficiaries from creditors who utilized the judicial system, a system that is built upon principles of fairness and protection of the rights of litigants, yet, on the other hand, leave such beneficiaries exposed to creditors who devised their own extrajudicial methods of collecting debts.

*Tom*, 151 F.3d at 1292 (citing *Crawford v. Gould*, 56 F.3d 1162, 1166 (9th Cir.1995)). Neither can this Court.

■ Even if this Court were persuaded by the reasoning of the other courts cited by First Security Bank, namely the courts in *Frazier*, *Gillespie*, and *Lopez*, summary judgment would nonetheless be inappropriate in this case. Hambrick has presented evidence that creates a genuine issue of material fact and thus would preclude this Court from granting First Security Bank's motion for summary judgment. Because the status of account # 1431390 is at issue, and because First Security Bank has not met its burden of showing that its contractual right of set-off continued to exist after First Security Bank closed the account, the Court cannot say that First Security Bank was acting pursuant to a valid, effective contractual right.

*Frazier* involved a contractual set-off of Social Security funds deposited into the plaintiff's bank against the unpaid balance on a defaulted loan with that bank. *Frazier*, 702 F.Supp. 1000. The court noted that the plaintiff could have effectively avoided this set-off by simply closing the account and opening another at a different bank. *Id.* at 1003. *See also Gillespie.* In this case, Hambrick has presented evidence that First Security Bank had closed his account prior to the set-off in question. The set-off provision in the account agreement does not specify that the right of set-off would continue after the account was closed. The agreement does contain a term entitled "Amendments and Termination," which states, "we may change any term of this agreement. . . . We may also close this account at any time upon reasonable notice to you and tender of the account balance personally or by mail." It seems that closing the account would terminate the contract. Thus, even if the Court were to agree with First Security

Bank's interpretation of § 407, a genuine issue of material fact would exist as to whether First Security Bank acted pursuant to an effective contract at the time of the set-off.

## REMAINING STATE LAW CLAIMS

First Security Bank also seeks the dismissal of each of the state-law claims that Hambrick raises in his complaint. In its motion for summary judgment, First Security Bank states that the state-law claims should be dismissed pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. However, First Security Bank answered without asserting that any claims should be dismissed under Rule 12(b)(6). The Court will treat First Security Bank's argument as one for summary judgment, which is appropriate because matters outside the pleadings will be considered. *Stahl v. U.S. Dept. of Agric.*, 327 F.3d 697, 700 (8th Cir.2003).

In addition to claiming a violation of the Social Security Act, Hambrick alleges that First Security Bank's actions constituted fraud, negligence, breach of fiduciary duty, conversion, negligent misrepresentation, and breach of good faith and fair dealing under the common law and the Arkansas Uniform Commercial Code. In his response to this motion for summary judgment, Hambrick admits that there is not a sufficient factual basis for his claims of fraud and breach of fiduciary duty. Accordingly, summary judgment will be granted on those claims.

 As to Hambrick's claim for negligence, First Security Bank asserts that Hambrick fails to set forth the duty owed and to establish facts that constitute a breach of that duty. The question of what duty is owed is always one of law. *Mans v. Peoples Bank of Imboden*, 340 Ark. 518, 524, 10 S.W.3d 885, 888 (2000). Ordinarily, the relationship between a bank and its customer is one of debtor and creditor. *Id.* at 525, 10 S.W.3d at 889. The duty owed is one of ordinary care. *Id.* at 526, 10 S.W.3d at 889. In his response to this motion for summary judgment, Hambrick stated in a conclusory manner that First Security Bank's actions in reopening his closed account constituted negligence. Neither party has devoted much argument to this issue separate from the argument regarding § 407. Viewing the facts in the light most favorable to Hambrick and in the absence of substantial argument from either party, this Court cannot say as a matter of law that First Security Bank acted with ordinary care. As with so many of the claims that follow, a genuine issue of material fact exists as to the status of the account at the time of the set-off. Summary judgment on the negligence claim will be denied.

 First Security Bank next asserts that Hambrick cannot establish a cause of action for conversion because the set-off was exercised pursuant to the account and note agreements. Hambrick asserts that First Security Bank was required to return the funds to the Social Security Administration because account 1431390 had been closed. He alleges that its failure to do so constitutes conversion. In Arkansas, conversion requires the intent to exercise dominion or control over property which is inconsistent with the owner's right. *J.W. Reynolds Lumber Co. v. Smackover State Bank*, 310 Ark. 342, 351, 836 S.W.2d 853, 857 (1992). Whether the offset was contrary to Hambrick's right depends on whether that offset violated § 407 and whether, apart from § 407, there was a contract in effect at the time of the offset. First Security Bank has not met its burden of proving that it is entitled to judgment as a matter of law. Summary

judgment on the conversion claim will be denied.

■ First Security Bank next argues that summary judgment should be granted on the claim for negligent misrepresentation. Arkansas does not recognize a cause of action for negligent misrepresentation. *South County, Inc. v. First Western Loan Co.*, 315 Ark. 722, 725–726, 871 S.W.2d 325, 326 (1994). *See also Boerner v. Brown & Williamson Tobacco Co.*, 126 F.Supp.2d 1160, 1170 (E.D.Ark.1999) (*aff'd in part and rev'd in part on other grounds by Boerner v. Brown & Williamson Tobacco Corp.*, 260 F.3d 837 (8th Cir.2001)). Summary judgment on the claim of negligent misrepresentation will be granted.

■ Finally, First Security Bank asserts that summary judgment should be granted on each of Hambrick's claims dealing with breach of common law and of the Arkansas Uniform Commercial Code duties of good faith and fair dealing. First Security Bank again refers to its right to set-off pursuant to its contractual agreements. It also appeals to the rights "long afforded by Arkansas common law and explicitly recognized by the Arkansas Uniform Commercial Code." Neither party cites cases on a common-law right of set-off. The code provision cited by First Security Bank states that "(a) Except as otherwise provided in subsection (c), a bank with which a deposit account is maintained may exercise any right of recoupment or set-off against a secured party that holds a security interest in the deposit account." Ark.Code Ann. 4–9–340. Whether the set-off was proper again revolves around the issue of whether the account was "maintained," which is disputed. Summary judgment on breach of the duty of good faith and fair dealing will be denied.

## CONCLUSION

Defendant's motion for summary judgment (Docket # 7) is GRANTED in part and DENIED in part.