**In re Alonzo Thomas WARD and Verlez Je Tann Ward, Debtors.**

**No. 11–53417–WLH.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

June 29, 2011.

Irenata S. Duncan, Deming, Parker, Hoffman, Green & Campbell, Norcross, GA, for Debtor.

## ORDER

WENDY L. HAGENAU, Bankruptcy Judge.

This matter came before the Court on the Motion for Relief from Automatic Stay ("Motion") filed by Georgia's Own Credit Union ("Credit Union") [Docket No. 9, as amended by Docket No. 20], pursuant to which the Credit Union sought relief from the stay to enforce its lien on funds in the

Debtors' deposit account at the Credit Union by way of setoff. The Debtors objected to the Motion on the basis that the funds in the deposit account were exempt Social Security benefits and not subject to the lien of the Credit Union under 42 U.S.C. § 407(a). The Trustee objected to the Motion, alleging that the deposit of the Social Security funds in the Debtors' account occurred within 90 days of the Petition Date and the Credit Union had, therefore, obtained a preferential transfer. The Trustee objected further to the Debtors' asserted exemption because the full amount of the Social Security benefit and the correct balance in the Credit Union deposit account had not been disclosed in the Debtors' initial Schedules. After a hearing on March 17, 2011, and then on April 7, 2011, the parties asked the Court to rule only on the Debtors' position that the funds deposited in the Credit Union deposit account by the Social Security Administration were not subject to the lien of the Credit Union under 42 U.S.C. § 407(a).[1]

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334, and the Motion and corresponding exemption objection are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(B) and (G). After review of the pleadings, and arguments of counsel, the Court concludes 42 U.S.C. § 407(a) does not prohibit the enforcement by the Credit Union of its lien on the deposit account in which the Social Security funds were deposited, particularly since the Debtors already received the benefit of the Social Security funds. The Court, therefore, permits the setoff of the liened funds and grants the Credit Union's Motion.

## FACTS

Verlez Ward, one of the co-debtors, entered into a Visa credit card agreement and a Designer Loan Open–End Revolving Credit Agreement with the Credit Union on or about August 12, 2002, evidenced by Exhibits A, B and C to the Credit Union's amended Motion. In Exhibit A, paragraph 14 provides,

> As a condition for the approval of our credit card account, you grant the Credit Union a specific pledge of your Credit Union savings (deposits). PLEDGE OF SHARE ACCOUNT(S) NOTE: You pledge, as security for what you owe, all present and future shares and/or deposits in all your individual and joint Credit Union accounts. If you are in default, the Credit Union has the right to apply all your present and future shares and/or deposits toward the amount you owe. Shares and deposits in an Individual Retirement Account and any other account that would lose special tax treatment under state and federal law, if given as security, are not subject to the security interest you have given in your shares.

Similarly, in Exhibit B, the Designer Loan Open–End Revolving Credit Agreement, paragraph 9 provides:

> The undersigned member hereby pledges all shares and deposits and payments and earnings thereon which undersigned member has or hereafter may have, except shares and deposits in an "Individual Retirement (IRA)" or "Keogh Plan", whether held jointly or individually, as security for any and all monies advanced under this Agreement and interest accrued thereon and authorizes the Credit Union to apply such

---

**1.** The parties did not contest that the funds frozen by the Credit Union were Social Security benefits.

shares, deposits and earnings to payment of said obligation . . .

Finally, Exhibit C also provides for the grant of a security interest in the deposit account, specifically in paragraph 3.

Mrs. Ward was employed by AT & T. In approximately September 2009, Mrs. Ward was diagnosed with a condition which disabled her from continued employment. She then received short-term disability from AT & T. In connection with her disability award, she signed a pre-authorized withdrawal form and agreement (although a signed version of the agreement has not been submitted by the Debtors) which authorized Allsup, Inc. on behalf of AT & T to withdraw funds from the Credit Union deposit account if and when the Social Security Administration deposited into the Credit Union deposit account a retroactive award of disability benefits. By letter dated December 22, 2010, the Social Security Administration advised Mrs. Ward that she would receive $19,566.00 as a lump sum retroactive disability award, and would begin receiving monthly payments in January 2011. The deposit of $19,566.00 was made into the Credit Union deposit account on December 17, 2010; however, Allsup did not withdraw the funds. Instead, the Debtors filed a bankruptcy petition on February 1, 2011. The Credit Union, which was owed $18,642.49 by Mrs. Ward, placed an administrative hold on the account with a balance at the time of $17,100.00 and filed its Motion on February 16, 2011. The Social Security disability award was not initially disclosed by the Debtors in their Schedules, but was disclosed at their first meeting of creditors and in subsequent Schedule amendments.

## LAW

■ The Debtors argue that the Social Security Act, 42 U.S.C. § 407(a) prohibits the Credit Union from enforcing its lien on the funds in the Credit Union deposit account. The Section provides:

The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment or other legal process, or to the operation of any bankruptcy or insolvency law.

The purpose of Section 407(a) is to "insure that recipients have the resources necessary to meet their most basic needs". *U.S. v. Devall,* 704 F.2d 1513, 1516–17 (11th Cir.1983).

■ The Debtors did not challenge the pledge of the deposit account as an inappropriate assignment. The Court agrees that the pledge was not an assignment of the Social Security benefits. Mrs. Ward pledged only an account into which funds from various sources were deposited. Moreover, the pledge occurred years before Mrs. Ward became eligible for Social Security benefits. Lastly, the Court notes the Social Security Administration's Program Operations Manual System (POMS) defines assignment as "the transfer of the right to, or payment of, benefits to a party other than the beneficiary." Social Security Administration's Program Operations Manual System; GN 02410.001—Assignment of Benefits; https://secure.ssa.gov/apps10/poms.nsf/lnx/020241001 (last visited June 27, 2011). The Court concludes the pledge of the Credit Union deposit account was not an assignment of benefits prohibited by Section 407(a).

■ The question presented to the Court, then, is whether the Credit Union's enforcement of a pledge of Debtors' deposit account at the Credit Union as security for credit advances violates Section 407(a). In *Lopez v. Washington Mut. Bank, FA,*

302 F.3d 900 (9th Cir.2002), the question before the court was whether a bank charging overdraft charges to the debtor's account into which Social Security benefits were deposited was a violation of the anti-assignment provision of the Social Security Act. The court ruled it was not. The court noted, "[t]here is simply no indication that the plaintiffs did not voluntarily agree to apply their [Social Security] benefits in such a fashion." *Id.* at 904. The court went on to observe that the plaintiffs were free to close their account or to change their direct deposit instructions. Since they did not do so, the court found the assignment was voluntary and did not violate the anti-assignment statute. *See also Sanford v. Standard Fed. Bank,* 2011 WL 721314 (E.D.Mich.2011) (stating setoff of overdraft charges does not involve "legal process"); *Wilson v. Harris,* 2007 WL 2608521 (N.D.Ill.2007) (finding bank's offset of overdraft charges did not violate Section 407); *Frazier v. Marine Midland Bank, N.A.,* 702 F.Supp. 1000 (W.D.N.Y. 1988) (concluding exercise of contractual setoff right in loan agreement is not violative of Section 407(a)).

Other courts have held that a financial institution cannot use a right of setoff to collect a pre-existing debt, distinguishing overdraft charges from other debts. *See Tom v. First Am. Credit Union,* 151 F.3d 1289 (10th Cir.1998) (concluding credit union could not use the self-help remedy of setoff to apply Social Security benefits contained in a checking account to satisfy the depositor's separate loan obligation to the bank notwithstanding the execution by the depositor of an agreement pledging the other deposits as security for the loan and authorizing the credit union to apply deposits to the loan); *Marengo v. First Massachusetts Bank, N.A.,* 152 F.Supp.2d 92 (D.Mass.2001) (finding bank's exercise of state law setoff rights to satisfy unsecured loan violated Section 407); *Hambrick v.*

*First Security Bank,* 336 F.Supp.2d 890 (E.D.Ark.2004) (concluding Section 407 protects against self-help remedies, and setoff under agreement to pay overdraft charges and note not proper); *In re Capps,* 251 B.R. 73 (Bankr.D.Neb.2000) (requiring bank to turn over funds setoff pre-petition pursuant to pledge agreement as violative of Section 407; "extrajudicial self-help methods" violate Section 407).

Most of the cases prohibiting offset, however, predate the Supreme Court's decision in *Washington State Dept. of Social & Health Services v. Guardianship Estate of Keffeler,* 537 U.S. 371, 123 S.Ct. 1017, 154 L.Ed.2d 972 (2003). Therein, the court concluded the lower court's analysis that Section 407(a) prohibited "creditor-type acts" was flawed. "... [N]either § 407(a) nor the Commissioner's regulations interpreting that provision say anything about 'creditors'." *Id.* at 382, 123 S.Ct. 1017. Rather, the question was whether the manner in which the Department of Social & Health Services gained control of the Social Security benefits involved "other legal process" as that term is used in Section 407(a). The court explained the use of "other legal process" in Section 407(a) is more limited than the broad understanding of legal process. Using customary statutory construction methods, the court concluded:

> 'other legal process' should be understood to be process much like the processes of execution, levy, attachment and garnishment, and at a minimum, would seem to require utilization of some judicial or quasi-judicial mechanism, though not necessarily an elaborate one, by which control over property passes from one person to another in order to discharge or secure discharge of an allegedly existing or anticipated liability.

*Id.* at 384–85, 123 S.Ct. 1017. The Supreme Court distinguished its earlier deci-

sions in *Philpott v. Essex County Welfare Board,* 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973) and *Bennett v. Arkansas,* 485 U.S. 395, 108 S.Ct. 1204, 99 L.Ed.2d 455 (1988) in which states had similarly sought reimbursement for the costs of the beneficiaries' care and maintenance because, in each case, the state was pursuing reimbursement through legal actions in a court.

In many of the cases cited above invalidating a financial institution's right to setoff, the distinguishing factor for the court was that the bank was exercising its rights as a creditor as opposed to its rights as the depository bank. However, the Supreme Court in *Keffeler* instructs that it is not the designation as a creditor or the use of the funds that is important, but rather the process which is utilized to obtain the funds. The question then is whether the Credit Union's enforcement by setoff of the consensual grant of a lien on a depository account is a judicial or quasi-judicial mechanism. The Court finds it is not. A quasi-judicial process is one that is similar to a judicial or adjudicative process. *Wilson,* 2007 WL 2608521; *Sanford,* 2011 WL 721314. The Credit Union uses no judicial or quasi-judicial process to exercise its right to the funds; the process is entirely internal. *See Fortelney v. Liberty Life Assurance Co. of Boston,* 2011 WL 1938174 (W.D.Okla.2011). The Court rules that, under the facts of this case, the Credit Union's exercise of its right of setoff granted to it by Mrs. Ward is not a violation of 42 U.S.C. § 407(a).

Moreover, allowing the Debtors to protect the Social Security benefits deposited in the account based on these facts would be improper for another reason. Here, Mrs. Ward received an advance of these very same Social Security funds from Allsup. The Debtors spent the money and therefore received the benefit of the pro-tection which Section 407(a) provides. Allowing the Debtors to now protect the funds as "Social Security benefits" allows the Debtors to effectively double-dip. "[W]ith the debtors having received the economic benefit of their … exemption once (by retaining and spending a sum roughly equivalent to their … exemption claim), 'they are not entitled to receive it a second time.'" *In re Price,* 384 B.R. 407, 410 (Bankr.E.D.Va.2008).

By way of analogy, the Court notes the approach of courts in allowing insurers, like Allsup in this case, to enforce agreements with debtors whereby Social Security benefits are effectively advanced and then recovered by the insurer when the retroactive benefits are deposited. *See Fortelney,* 2011 WL 1938174. In *Fortelney,* the court held that executing an agreement such as that between Allsup and Mrs. Ward and allowing the insurance company to withdraw the funds from the beneficiary's account did not constitute a violation of Section 407(a). The fact that the amount recovered by the insurance company matched the amount deposited by the Social Security Administration was not sufficient to find a violation under Section 407(a). Allowing the Debtors here to protect the Social Security benefits deposited into their account after they have fully utilized the matching amount deposited by Allsup does more than allow the Debtors to protect their ability to maintain basic care and necessities. Instead, it would allow the Debtors to double the benefits which were properly payable and protectable by the Debtors. This is most certainly not the purpose of Section 407(a) of the Social Security Act.

### CONCLUSION

Mrs. Ward voluntarily gave a lien on the deposit account (as opposed to the Social Security benefits) to the Credit Union to

secure credit advances and the Credit Union's enforcement of the lien does not involve judicial or quasi-judicial processes. The Debtors already received the benefit of the Social Security disability award through Allsup's advance. The Court therefore concludes the Credit Union's right to setoff is not impaired by 42 U.S.C. § 407(a). The Court GRANTS the Motion for Relief from Stay by the Credit Union, without prejudice to the Trustee's right to seek to avoid any lien of the Credit Union as a preference or on any other basis.