LAKEWOOD CREDIT UNION, Plaintiff-Respondent,

v.

Theodore GOODRICH, Defendant-Appellant.

Court of Appeals

*No. 2015AP320. Submitted on briefs February 9, 2016.
—Decided September 7, 2016.*

2016 WI App 77

(Also reported in 887 N.W.2d 342.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Eric L. Crandall* of *Crandall Law Offices, S.C.*, New Richmond.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *William A. Grunewald* of *Jensen, Scott, Grunewald & Shiffler, S.C.* of Medford.

Before Stark, P.J., Hruz and Seidl, JJ.

¶ 1. HRUZ, J. Theodore Goodrich appeals a judgment dismissing his counterclaim alleging Lakewood Credit Union violated federal law when it seized and liquidated his depository accounts containing funds he originally received as social security benefits and applied those funds to the balance due on a loan. Goodrich argues Lakewood was not permitted to take security interests in the accounts in the first instance. He also argues that, in seizing the accounts, Lakewood utilized an impermissible "legal process" from which his social security benefits were exempt. We reject Goodrich's arguments and affirm.

## BACKGROUND

¶ 2. Goodrich fell down a flight of stairs in 1990 and was injured. He subsequently sought disability benefits from the United States Social Security Administration on his behalf and that of his two daughters. The Administration approved Goodrich's application in

late 2011 or early 2012, and Goodrich received lump sum payments for past benefits and also began receiving monthly benefits. These payments were deposited at Park City Credit Union.

¶ 3. Goodrich later transferred $20,000 from Park City to Lakewood in connection with his efforts to obtain a consumer loan from Lakewood. He placed $10,000 in an account in his name, and $5,000 in custodial accounts for each of his two daughters. On August 10, 2012, Goodrich executed a consumer note for a $20,000 loan from Lakewood, which was set to mature one year later. Goodrich pledged the funds in the three depository accounts as security for the loan. According to Goodrich, the funds in those accounts consisted entirely of social security benefits he had received. Goodrich failed to make the payment due on August 10, 2013.

¶ 4. On August 30, 2013, Goodrich filed a Chapter 7[1] bankruptcy action in the United States Bankruptcy Court for the Western District of Wisconsin. Goodrich listed the $20,000 on deposit with Lakewood as exempt personal property in the schedules attached to the bankruptcy petition. His petition also acknowledged Lakewood's $20,000 secured claim.[2] Goodrich's petition indicated his intention was to retain the depository accounts and repay the loan.[3] Goodrich repre-

---

[1] *See* 11 U.S.C. §§ 701–784 (2012). All references to the United States Code are to the 2012 version unless otherwise noted.

[2] For an unknown reason, Schedule D of the bankruptcy petition identifies half of Lakewood's $20,000 claim as being unsecured.

[3] In the "Chapter 7 Individual Debtor's Statement of Intention," Goodrich indicated he intended to retain his Lakewood accounts. The form then asked Goodrich to indicate by checking a box whether he intended to redeem the property or reaffirm the debt. Goodrich did not check either of those boxes.

sented he had no contingent or unliquidated claims of any nature, including "counterclaims of the debtor." He obtained a discharge, and the bankruptcy proceedings were closed in late December 2013. It is undisputed that the $20,000 Lakewood loan and corresponding security interests were not discharged in the bankruptcy action.

¶ 5. Following termination of the bankruptcy proceedings, Lakewood sent Goodrich a "Notice of Right to Cure Default." The notice identified the loan at issue and advised Goodrich he could cure the default by February 13, 2014, by paying the amount of the balloon payment plus $279.45 in interest accrued between August 10, 2013, and January 27, 2014. Goodrich did not cure the default. As a result, on February 20, 2014, Lakewood liquidated the funds contained in the three depository accounts Goodrich had pledged as security for the loan and applied those funds to the loan. Although the funds were insufficient to pay the loan in full, Lakewood did not pursue a deficiency judgment given Goodrich's then-recent bankruptcy discharge.

¶ 6. Lakewood filed the present replevin action on February 20, 2014. The replevin action was based on a different loan transaction between the parties occurring in October 2012, in which Lakewood loaned Goodrich $17,200 to purchase a 2011 Yanmar tractor and accessories.[4] Goodrich answered and filed counterclaims

Instead, he checked the "other" box and, when prompted to explain, he wrote, "repayment."

[4] Goodrich's counterclaim asserted that he was induced to move his depository accounts from Park City to Lakewood in connection with the October 2012 loan. The documents in the record establish that by October 2012, the accounts were already at Lakewood and had been pledged as security for the August 2012 loan at issue in this appeal.

relating to the August 2012 transaction, alleging several violations of the Wisconsin Consumer Act (WCA) and asserting that, because the depository accounts Lakewood liquidated contained social security benefits, they were "exempt from seizure." Lakewood responded that Goodrich had failed to disclose in his bankruptcy schedules any claim that Lakewood's security interests in the depository accounts were void. As a result of Goodrich's failure to identify such a claim, Lakewood raised judicial estoppel and lack of standing as affirmative defenses.

¶ 7. Lakewood filed a motion seeking summary judgment on both its claim and Goodrich's counterclaims. Lakewood noted Goodrich did not contest any of its allegations regarding the October 2012 loan; rather, his arguments were all directed toward the validity of Lakewood's security interests and subsequent enforcement efforts with respect to the August 2012 loan. In addition to arguing that both judicial estoppel and a lack of standing barred Goodrich's counterclaims, Lakewood asserted that its conduct in liquidating Goodrich's depository accounts did not violate the WCA or federal law.

¶ 8. Goodrich responded with an affidavit and brief in opposition to summary judgment. Goodrich's affidavit included a wide-ranging discussion of the August 2012 loan transaction's background, including certain alleged extra-contractual promises the loan officer made at the time. His brief asserted Lakewood had violated the WCA by, among other things, engaging in "nonjudicial enforcement of a security interest" based upon deficient notice of right to cure default. However, Goodrich then took the seemingly inconsistent position that Lakewood had violated federal law by employing "legal process" to seize Goodrich's depository accounts

91

containing social security benefits, contrary to 42 U.S.C. § 407(a). Goodrich also argued his bankruptcy documents were accurate at the time of their filing and, therefore, his counterclaims should not be dismissed for a lack of standing or by virtue of judicial estoppel.

¶ 9. Following further responsive submissions by Lakewood, the circuit court held a motion hearing. The court determined that Lakewood was entitled to summary judgment on its replevin claim related to the October 2012 loan transaction. It then considered whether summary judgment was warranted on Goodrich's counterclaims related to the August 2012 loan transaction. The court concluded there had been no WCA violation and dismissed those counterclaims. However, the court withheld decision on Goodrich's counterclaim based on federal law, expressing its desire to review the United States Supreme Court's decision in *Washington State Department of Social & Health Services v. Guardianship Estate of Keffeler*, 537 U.S. 371 (2003), as it pertained to the proper interpretation of the phrase "other legal process" found within 42 U.S.C. § 407(a).

¶ 10. The circuit court subsequently issued a decision granting Lakewood summary judgment on Goodrich's counterclaim for an alleged violation of 42 U.S.C. § 407(a). It observed that *Keffeler* "holds that the 'other legal process' prohibition against accessing social security benefits is very narrow, and requires some judicial or quasi-judicial mechanism to effectuate." The court determined that "[t]he voluntary assignment of the account by Goodrich does not require any judicial mechanism [to effectuate] and isn't included in [the] definition of other legal process." Goodrich now appeals.

92

## DISCUSSION

¶ 11. Goodrich's sole argument on appeal is that the circuit court erroneously dismissed his counterclaim alleging a violation of 42 U.S.C. § 407(a).[5] All facts relevant to this argument are undisputed. Accordingly, the only issue is whether Lakewood was entitled to judgment as a matter of law. *See* WIS. STAT. § 802.08(2). We decide this issue de novo. *Fortier v. Flambeau Plastics Co.*, 164 Wis. 2d 639, 651, 476 N.W.2d 593 (Ct. App. 1991).

¶ 12. Goodrich alleges two violations of 42 U.S.C. § 407(a). First, he claims Lakewood impermissibly took security interests in his depository accounts, with knowledge that those accounts contained funds originally received as social security benefits. Second, Goodrich alleges Lakewood violated a separate clause of

_____

[5] Goodrich also asserts Lakewood engaged in a prohibited practice in violation of WIS. STAT. § 427.104(1)(j), which is part of the Wisconsin Consumer Act. However, the existence of such a violation necessarily depends on whether federal law barred both Lakewood's taking of security interests in the depository accounts and its subsequent enforcement of those security interests. Paragraph 427.104(1)(j) prohibits a debt collector from claiming, or attempting or threatening to "enforce a right with knowledge or reason to know that the right does not exist." Goodrich reasons Lakewood's right to seize his depository accounts did not exist because such efforts were prohibited by 42 U.S.C. § 407(a). Because we conclude § 407(a) did not prohibit either Goodrich from granting security interests in the depository accounts or Lakewood from enforcing those security interests in the manner it did, we also conclude the circuit court properly granted summary judgment on Goodrich's counterclaim alleging a violation of § 427.104(1)(j).

All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

§ 407(a) by enforcing those security interests and seizing "the benefits" contained in the accounts. To the extent these arguments require us to interpret and apply § 407(a), we do so as a matter of law, using a de novo standard of review. *See Racine Harley-Davidson, Inc. v. State Div. of Hearings & Appeals*, 2006 WI 86, ¶ 14, 292 Wis. 2d 549, 717 N.W.2d 184.

¶ 13. We first consider Goodrich's argument that Lakewood could not validly take security interests in his depository accounts containing funds originally received as social security benefits. The initial hurdle Goodrich must overcome, as Lakewood observes, is whether Goodrich can even make such a claim at this time.%r %r Goodrich has availed himself of the protections afforded by the federal bankruptcy laws; as part of that process, he was required to submit a schedule of assets to the bankruptcy court. *See* 11 U.S.C. § 521(a)(1)B.i. "It goes without saying that the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims.*" *Browning Mfg. v. Mims*, 179 F.3d 197, 207–08 (5th Cir. 1999). The debtor's disclosure obligation extends to all potential causes of action, even if the debtor does not know all the facts or even the legal basis for the cause of action. *Id.* at 208 (citing *Youngblood Grp. v. Lufkin Fed. Sav. & Loan Ass'n*, 932 F. Supp. 859, 867 (E.D. Tex. 1996)). If the debtor has sufficient information to suggest a possible cause of action, the cause of action must be disclosed. *Id.*

¶ 14. Courts have taken two approaches to the problem of debtors later asserting claims they failed to disclose in a bankruptcy proceeding. The first approach is to bar the debtor's subsequent claims through appli-

94

cation of judicial estoppel. *See, e.g., Guay v. Burack*, 677 F.3d 10, 17–20 (1st Cir. 2012); *Cannon-Stokes v. Potter*, 453 F.3d 446, 447–48 (7th Cir. 2006) (collecting cases). Judicial estoppel is designed to prevent a litigant from "playing 'fast and loose with the courts' by asserting inconsistent positions." *State v. Petty*, 201 Wis. 2d 337, 347, 548 N.W.2d 817 (1996) (quoting *State v. Fleming*, 181 Wis. 2d 546, 557, 510 N.W.2d 837 (Ct. App. 1993)). "[I]t is well-established that a failure to identify a claim as an asset in a bankruptcy proceeding is a prior inconsistent position that may serve as the basis for application of judicial estoppel, barring the debtor from pursuing the claim in a later proceeding." *Guay*, 677 F.3d at 17.

¶ 15. The second approach is to address the problem as one of standing. In a bankruptcy action, pre-bankruptcy claims, including potential causes of action, become part of the bankruptcy estate. *Biesek v. Soo Line R.R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006). Such claims therefore belong to the bankruptcy trustee, to be pursued (or not, as the case may be) for the benefit of the debtor's creditors. *Id.* This is true even if the debtor failed to schedule the claim in his or her bankruptcy petition. *Correll v. Equifax Check Servs., Inc.*, 234 B.R. 8, 10 (D. Conn. 1997); *cf. Tyler v. DH Capital Mgmt., Inc.*, 736 F.3d 455, 462 (6th Cir. 2013) (pre-petition claims are property of the bankruptcy estate even if debtor is unaware of them). Unless abandoned by the trustee under 11 U.S.C. § 554, the unscheduled claim remains the property of the estate upon the bankruptcy's closure. *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004); *In re Prochnow*, 474 B.R. 607, 615 (Bankr. C.D. Ill. 2011), *aff'd*, 467 B.R. 656 (C.D. Ill. 2012); *In re Enyedi*, 371 B.R. 327, 334 (Bankr. N.D. Ill.

2007). When a debtor later brings an action based on an undisclosed claim that has not been abandoned, the debtor "appears to be an interloper, trying to prosecute a claim that belongs to his estate in bankruptcy." *Biesek*, 440 F.3d at 413.

¶ 16. Ultimately, we need not decide which of these rationales, or both, applies to bar that portion of Goodrich's counterclaim asserting that Lakewood's security interests in his depository accounts is void. Despite Lakewood having raised both standing and judicial estoppel in its responsive appellate brief, Goodrich did not file a reply brief addressing these arguments, nor did he strike a preemptive blow against them in his initial brief. Under these circumstances, we deem Goodrich to have conceded the validity of Lakewood's arguments and tacitly acknowledged that he cannot maintain his counterclaim on the basis that the agreement to pledge his depository accounts as security for the August 2012 loan was void. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) ("Respondents on appeal cannot complain if propositions of appellants are taken as confessed which they do not undertake to refute." (quoting *State ex rel. Blank v. Gramling*, 219 Wis. 196, 199, 262 N.W. 614 (1935))).

¶ 17. Goodrich's assertion that Lakewood's security interests were an impermissible assignment or transfer of social security benefits also fails on its merits. Subsection 407(a) of Title 42 of the United States Code contains, as relevant here, two prohibitions, the first of which is known as the "anti-assignment provision." *See In re Franklin*, 506 B.R. 765, 769–70 (Bankr. C.D. Ill. 2014). The anti-assignment provision bars the assignment or transfer of "[t]he right

of any person to any future payment" of social security benefits. *Id.* at 769 (quoting § 407(a)). As is evident from its plain language, this provision applies only to the assignment of future benefits, not to benefits that have already been received. *Ponath ex rel. Outagamie Cty. Dep't of Public Welfare v. Hedrick*, 22 Wis. 2d 382, 387, 126 N.W.2d 28 (1964); *see also, e.g., United States v. Eggen*, 984 F.2d 848, 850 (7th Cir. 1993) ("But once [the benefits] are paid over to the recipient, as here, he can use them to satisfy his preexisting obligations."); *In re Franklin*, 506 B.R. at 769.

¶ 18. The classic "assignment" scenario involves a beneficiary's attempt to allow a third party to receive and disburse social security funds. *See Townsel v. DISH Network L.L.C.*, 668 F.3d 967, 971 (7th Cir. 2012) (citing *Tidwell v. Schweiker*, 677 F.2d 560 (7th Cir. 1982)). Pledging the contents of a depository account containing already received social security benefits as collateral for a loan is not an improper assignment or transfer of future benefits. *In re Ward*, 464 B.R. 471, 474–75 (Bankr. N.D. Ga. 2011); *see also Townsel*, 668 F.3d at 971 ("[S]*pending* money with a source in Social Security benefits is distinct from *assigning* the benefit stream itself."). A contractual promise of already received benefits is precisely what occurred in this case and does not violate the anti-assignment provision.[6]

---

[6] The authorities Goodrich cites in arguing to the contrary are inapposite. *Bennett v. Arkansas*, 485 U.S. 395 (1988) (per curiam), did not involve 42 U.S.C. § 407(a)'s prohibition on the assignment of future social security benefits. Rather, the State of Arkansas was attempting to *attach* already received social security funds pursuant to state law; this was plainly barred by § 407(a)'s second clause. *Id.* at 396–97; *see also infra* ¶ 19. Goodrich also cites other authorities holding that social secu-

¶ 19. This leaves only Goodrich's second argument, which is that Lakewood violated 42 U.S.C. § 407(a) by seizing his depository accounts, liquidating the funds within them, and applying those funds to reduce the amount owed on the August 2012 loan. Goodrich relies on § 407(a)'s second prohibition, which is known as the "general exemption provision." *See In re Franklin*, 506 B.R. at 769. This provision "protects social security benefits paid or payable from [certain] creditor collection rights." *Id.* The general exemption provision states in relevant part that "none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment *or other legal process.*" Subsec. 407(a) (emphasis added). Goodrich cites numerous cases suggesting this provision has a broad reach that prohibits even a voluntary agreement permitting the creditor of a social security beneficiary to seize his or her accounts containing funds originally received as social security benefits should the debtor default on a credit or loan transaction.

---

rity funds deposited in bank accounts generally retain their character as social security benefits. Once again, these cases concern the general exemption provision, *see infra* ¶ 19, not the anti-assignment provision, and our holding in this case does no harm to the principle stated within them regarding social security funds retaining their character. *See, e.g., Porter v. Aetna Cas. & Sur. Co.*, 370 U.S. 159, 162 (1962) (holding that veteran's benefits retain their exempt status as long as they are "readily available as needed for support and maintenance, actually retain the qualities of moneys, and have not been converted into permanent investments"); *E.W. v. Hall*, 917 P.2d 854, 858 (Kan. 1996) (analyzing whether social security benefits placed in a certificate of deposit retained their status as exempt from attachment/garnishment under *Porter*).

¶ 20. *Tom v. First American Credit Union*, 151 F.3d 1289 (10th Cir. 1998), offered perhaps the most-expansive reading of 42 U.S.C. § 407(a)'s "other legal process" clause. There, the debtor signed a credit agreement in which she pledged all funds on deposit with the credit union as security and authorized the credit union to apply those funds as payments toward the amount owed upon default. *Id.* at 1290–91. The credit union ultimately seized funds consisting of previously received social security benefits when the debtor failed to make required payments. *Id.* at 1291. The debtor alleged the credit union's use of an "equitable self-help remedy" was equivalent to the use of "other legal process" to obtain social security benefits, the latter of which is prohibited by § 407(a). The district court agreed. *Tom*, 151 F.3d at 1291.

¶ 21. The Tenth Circuit Court of Appeals affirmed, concluding 42 U.S.C. § 407(a) imposed a "broad bar against the use of any legal process to reach all social security benefits." *Id.* (quoting *Philpott v. Essex Cty. Welfare Bd.*, 409 U.S. 413, 417 (1973)). In *Philpott*, the State of New Jersey had required welfare recipients to sign a reimbursement agreement; the state subsequently sought to enforce this agreement in a lawsuit to collect a welfare recipient's social security benefits. *Philpott*, 409 U.S. at 414–15. The Supreme Court reasoned the state's lawsuit was prohibited by § 407(a) as a clear attempt to use "other legal process" to reach the benefits. *Philpott*, 409 U.S. at 415–16. Although the *Tom* court acknowledged that the credit agreement before it—unlike the lawsuit in *Philpott*—"permitted the Credit Union to collect its debts without resorting to the court system," the court opined there was "no principled difference" between its facts and *Philpott*'s because both cases involved "contracts of adhesion that

99

creditors attempted to use to get their hands on Social Security payments." *Tom*, 151 F.3d at 1291–92.

¶ 22. Along with *Tom*, Goodrich cites a bevy of authorities in support of his argument that Lakewood's extrajudicial enforcement of its security interests in this case was a prohibited use of "other legal process." *See, e.g., Crawford v. Gould*, 56 F.3d 1162, 1165–67 (9th Cir. 1995) (42 U.S.C. § 407(a) preempted state practice of deducting social security benefits from involuntary commitment patient accounts); *Hambrick v. First Sec. Bank*, 336 F. Supp. 2d 890, 893–95 (E.D. Ark. 2004) (adopting *Tom*'s reasoning in holding that receipt of future social security benefits is protected against a bank's self-help remedy); *In re Capps*, 251 B.R. 73, 75 (Bankr. D. Neb. 2000) (relying on *Tom* in holding that the exercise of a non-judicial remedy of a setoff against already received social security benefits "is a 'legal procedure' proscribed by § 407"). The problem with *Tom* and these other cases is that they no longer appear to be good law after the Supreme Court's *Keffeler* decision.[7]

---

[7] Even prior to *Washington State Department of Social & Health Services v. Guardianship Estate of Keffeler*, 537 U.S. 371 (2003), federal jurisdictions did not uniformly hold that a bank's seizure of an account containing funds received as social security benefits to reduce the depositor's indebtedness violated federal law where the transfer was made pursuant to a voluntary agreement between the parties. *See Lopez v. Washington Mut. Bank, FA*, 302 F.3d 900, 904–06 (9th Cir. 2002), *opinion amended on denial of reh'g sub nom, Lopez v. Washington Mut. Bank, F.A.*, 311 F.3d 928 (9th Cir. 2002) (distinguishing *Crawford v. Gould*, 56 F.3d 1162 (9th Cir. 1995) as not controlling "free market banking arrangement[s]" and recognizing its split of authority with *Tom v. First American Credit Union*, 151 F.3d 1289 (10th Cir. 1998)); *Frazier v. Marine Midland Bank, N.A.*, 702 F. Supp. 1000, 1003 (W.D.N.Y. 1988) ("[A] bank's use of its contractual setoff procedure to settle a depositor's indebtedness is not the type of 'legal process'

¶ 23. In *Keffeler*, the State of Washington enacted a regulatory scheme that permitted it to recoup the cost of its providing care to foster children by being appointed the children's representative payee, thereby allowing it to receive qualifying children's social security proceeds. *Keffeler*, 537 U.S. at 378. The Court observed that none of the state's activities involved execution, levy, attachment, or garnishment under 42 U.S.C. § 407(a). *Keffeler*, 537 U.S. at 383. "These legal terms of art refer to formal procedures by which one person gains a degree of control over property otherwise subject to the control of another, and generally involve some form of judicial authorization." *Id.* (citing BLACK'S LAW DICTIONARY 123, 689 (7th ed. 1999)).

¶ 24. This left the question of whether Washington had employed "other legal process" to obtain the children's federal benefits. Acknowledging that, in the abstract, Washington did use a sort of "legal process" by being appointed representative payee for the children and making claims against the children's accounts kept by the state treasurer, the Court nonetheless held that 42 U.S.C. § 407(a) uses the phrase "far more restrictively." *Keffeler*, 537 U.S. at 383–84. Invoking the interpretive canons *noscitur a sociis* and *ejusdem generis,* the Court stated:

> "other legal process" should be understood to be process much like the processes of execution, levy, attachment, and garnishment, and at a minimum, would seem to require utilization of some judicial or quasi-judicial mechanism, though not necessarily an elaborate one, by which control over property passes from one person to

contemplated by § 407(a)."); *In re Gillespie*, 41 B.R. 810, 812 (Bankr. D. Colo. 1984) (Social security benefits are not exempt from bank setoff, which is not a "legal process.").

> another in order to discharge or secure discharge of an allegedly existing or anticipated liability.

*Id.* at 384–85. The Court remarked that Washington's reimbursement scheme was nothing like execution, levy, attachment or garnishment because it "operate[d] on funds already in the department's possession and control, held on terms that allow the reimbursement." *Id.* at 386.

¶ 25. The Supreme Court's directive in *Keffeler* regarding the proper scope of the phrase "other legal process" defeats Goodrich's argument. Most of the authorities on which he relies predate *Keffeler* and appear not to have survived that decision on the relevant point of law. *See Fortelney v. Liberty Life Assurance Co. of Boston*, 790 F. Supp. 2d 1322, 1346 (W.D. Okla. 2011) (acknowledging *Keffeler*'s implicit overturning of *Tom*); *Ward*, 464 B.R. at 475 (questioning precedential status of authorities predating *Keffeler*); *see also Wojchowski v. Daines*, 498 F.3d 99, 108–09 (2d Cir. 2007) (acknowledging that the Second Circuit's previous "expansive" interpretation of the phrase "other legal process" in *Robbins ex rel. Robbins v. DeBuono*, 218 F.3d 197 (2d Cir. 2000), was incompatible with the restrictive reading of that phrase in *Keffeler*).[8] *Hambrick*, the one case

---

[8] As the court in *In re Ward*, 464 B.R. 471 (Bankr. N.D. Ga. 2011) recognized, many pre-*Keffeler* decisions relied upon the notion, best articulated in *Tom*, 151 F.3d at 1292, that Congress must not have intended to protect social security beneficiaries from "creditors who utilized the judicial system, a system that is built upon principles of fairness and protection of the rights of litigants, yet, on the other hand, leave such beneficiaries exposed to creditors who devised their own extrajudicial methods of collecting debts." *See Ward*, 464 B.R. at 475–76. *Keffeler* rejected this distinction for purposes of the general exemption provision: "[N]either § 407(a) nor the

Goodrich cites that both supports his interpretation of 42 U.S.C. § 407(a) and post-dates the Supreme Court's *Keffeler* decision, does not mention *Keffeler* and relies upon the authorities whose viability has been called into doubt, including *Tom. See Hambrick*, 336 F. Supp. 2d at 894.[9]

¶ 26. Goodrich contends *Keffeler* is materially distinguishable on its facts. He highlights that, here, Lakewood was not acting as his representative payee and, as such, had no right to use the social security funds on his behalf. *See Keffeler*, 537 U.S. at 376–77. However, the Supreme Court's interpretation of 42 U.S.C. § 407(a)'s "other legal process" was not limited to the particular facts before it. Rather, it made a pointed, declarative statement about the scope of that provision in all instances. *See Townsel*, 668 F.3d at 969 ("Use of a debit card [to collect a termination fee from funds in an

Commissioner's regulations interpreting that provision say anything about 'creditors.' " *Keffeler*, 537 U.S. at 382.

[9] Moreover, *Hambrick v. First Security Bank*, 336 F. Supp. 2d 890 (E.D. Ark. 2004), arguably supports Lakewood's position on appeal. Although the court relied on several questionable authorities to support its conclusion that "Social Security benefits are protected against [a bank's] self-help" setoff remedy, the court also observed that the case really involved an assignment of *future* social security benefits (*not* whether the setoff at issue was "other legal process" under 42 U.S.C. § 407(a)), because Hambrick's bank account was in a closed status at the time benefits seized by the bank were deposited. *Id.* at 893–94. Thus, the court stated Hambrick "could, consistent with § 407, make payments on his debts from Social Security benefits, but he could not transfer or assign payments that he had not received" at the time he signed the account agreement containing a setoff provision. *Id.* at 894. The court seemed to allow that, had the account remained open, the setoff may have validly occurred under § 407 pursuant to the bank's contractual rights. *See id.* at 894–95.

account coming from social security benefits] is not remotely like garnishment, attachment, or 'other legal process'. Legal process is involuntary (from the debtor's perspective), while Townsel's arrangement with DISH was consensual."); *cf. Hoult v. Hoult*, 373 F.3d 47, 56 (1st Cir. 2004) (observing, in a case not involving the appointment of a representative payee, the supreme court's guidance in *Keffeler* regarding the proper interpretation of "other legal process," but resolving the matter on other grounds). If the "abstract" legal process in *Keffeler* did not run afoul of § 407(a), it is difficult to envision how the present circumstances—i.e., Lakewood's exercise of its contractual right to liquidate Goodrich's already received and pledged social security benefits in the event of default—could possibly do so.

¶ 27. Nonetheless, Goodrich attempts a half-hearted argument in this regard:

> When the Wisconsin Legislature enacted Chapter 186, it created the legal basis for the existence of a Wisconsin Credit Union, and the regulatory scheme under which they operate. When the Wisconsin Legislature enacted [WIS. STAT. § 186.098(13),[10] it] created and regulated the 'legal process' by which a Wisconsin credit union may validly employ a setoff of money held in a customer's account. Accordingly, Lakewood employed 'legal process' when it seized the social security benefits sitting in Ted Goodrich's and his daughter[s'] accounts, and did so in violation of 42 U.S.C. § 407(a).

We reject this argument as clearly incompatible with *Keffeler*'s analysis.

---

[10] WISCONSIN STAT. § 186.098(13) generally imposes a lien in favor of a credit union in any deposit accounts for any amount owed to the credit union by the member. Upon default, and with certain exceptions, the credit union has an immediate right of setoff. *Id.*

¶ 28. Under *Keffeler*, "[t]hree essential characteristics define an impermissible 'legal process': (1) the process is 'judicial or quasi-judicial'; (2) the process transfers 'control of property . . . from one person to another'; and (3) the process is applied 'in order to discharge or secure discharge of an allegedly existing or anticipated liability.' " *Wojchowski*, 498 F.3d at 109 (quoting *Keffeler*, 537 U.S. at 385) (omission in *Wojchowski*). Goodrich ignores the first requirement, that the "other legal process" have some judicial or quasi-judicial component. No such component exists in this case by virtue of the legislature simply enacting a regulatory scheme that generically establishes a credit union's right to setoff depository accounts of its members. In any event, Lakewood's conduct here was based on a contract—including Goodrich's affirmative decision to pledge the depository accounts at issue as security in order to obtain the loan on which he later defaulted—not Lakewood's invocation of any statutory rights.

*By the Court.*—Judgment affirmed.